UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGE N. PERRY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

18-CV-1417
DECISION & ORDER

---

On December 5, 2018, the plaintiff, George N. Perry, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On August 29, 2019, Perry moved for judgment on the pleadings, Docket Item 14; on October 25, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on October 31, 2019, Perry replied, Docket Item 17.

For the reasons stated below, this Court grants Perry's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I. ALLEGATIONS**

Perry argues that the ALJ erred in determining his residual functional capacity ("RFC") because the ALJ improperly discounted the opinion of Perry's treating physician, Fatai A. Gbadamosi, M.D. Docket Item 14-1 at 14-18. This Court agrees that the ALJ erred and, because the error prejudiced Perry, remands the matter for re-consideration of Perry's RFC.

## II. ANALYSIS

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

Here, the ALJ gave less-than-controlling weight to the opinion of Perry's treating physician, Dr. Gbadamosi, without first considering several of the *Burgess* factors.

Dr. Gbadamosi treated Perry from February 2013 through at least April 2017. Docket Item 8 at 380, 565. During that time, Dr. Gbadamosi diagnosed asthma, Bell's palsy, constipation, Human Immunodeficiency Virus disease ("HIV"), hypertension, hyperlipidemia, hypertriglyceridemia, irritable bowel syndrome, major depressive disorder, reactive airways disease, and schizophrenia. *See, e.g.*, *id.* at 301, 310, 361, 381, 566, 573. Perry also sought treatment for acute bilateral foot pain in September 2016 and right shoulder pain in April 2017. *See id.* at 565, 569.

In June 2017, Dr. Gbadamosi opined that Perry could occasionally lift or carry up to ten pounds; could sit for up to three hours during an eight-hour workday[2]; could never operate foot controls, climb ladders or scaffolds, balance, or crawl; could occasionally reach in all directions, push and pull objects, climb stairs and ramps, stoop, kneel, and crouch; and could frequently handle, finger, and feel objects. *Id.* at 643-46. In response to a question asking whether Perry's "limitations . . . lasted or will . . . last for 12 consecutive months," Dr. Gbadamosi stated only: "pending MRI approval." *Id.* at 648.

The ALJ gave "little weight" to Dr. Gbadamosi's opinion. *Id.* at 22. The ALJ explained that "the record does not reflect that [Perry] is so limited to sedentary level work." *Id.* "Specifically," the ALJ continued, "[Perry's] only severe physical impairments are HIV and hypertension, which are currently controlled with treatment. Additionally, [Perry's] alleged right shoulder pain is not a medically determinable impairment and the

---

[2] Dr. Gbadamosi did not indicate any length of time that Perry could stand or walk. *See id.*

4

record does not support the need for manipulative restrictions." *Id.* As a result, the ALJ found that Perry had the following RFC:

> [Perry can] perform light[3] work . . . except [he can] never climb ladders, ropes, and scaffolds; occasionally [can] climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and [must] avoid concentrated exposure to extreme heat and cold, to humidity, wetness, and to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. [Perry] is further limited to simple, routine, and repetitive tasks.

*Id.* at 19.

The ALJ failed to "explicitly" consider several of the *Burgess* factors before assigning "little weight" to Dr. Gbadamosi's opinion. For example, Dr. Gbadamosi had treated Perry for over four years and therefore likely had "a detailed, longitudinal picture of [Perry's] medical impairments," *see* 20 C.F.R. § 404.1527(a)(2), (c)(2). But the ALJ referred *only* to the June 2017 opinion form and never indicated that Dr. Gbadamosi's long treatment history played any role in his evaluation of Dr. Gbadamosi's findings and conclusions. *See* Docket Item 8 at 22. Furthermore, the ALJ provided little more than conclusory assertions regarding the extent to which Dr. Gbadamosi's opinion was "consisten[t] . . . with the remaining medical evidence." *Greek*, 802 F.3d at 375. Indeed, the ALJ's opinion failed to acknowledge a number of conditions for which Dr. Gbadamosi provided treatment over the years, including irritable bowel syndrome, major depressive disorder, and reactive airways disease. In the absence of even a

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

5

passing reference to these diagnoses, this Court cannot determine whether the ALJ properly considered the impact of these conditions on Perry's daily functioning.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. Gbadamosi's opinion. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

The ALJ's determination is not supported by "good reasons" in several ways. First, in rejecting Dr. Gbadamosi's professional opinion, the ALJ substituted his own lay opinion for that of a medical expert. For example, the ALJ asserted that "the record does not support the need for manipulative restrictions." Docket Item 8 at 22. But Dr. Gbadamosi opined that while Perry could frequently handle, finger, and feel objects, Perry could never operate foot controls and could only occasionally push and pull. *Id.* at 643-46. The ALJ did not include any of these restrictions in his RFC. Doing so was error because an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Indeed, "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

6

The only medical opinion that might possibly support the ALJ's rejection of Dr. Gbadamosi's opinion was that of the consulting physician, Hongbiao Liu, M.D., to whose opinion the ALJ gave "great weight." Docket Item 8 at 22. Dr. Liu had opined in April 2015 that Perry "ha[d] mild to moderate limitations for prolonged walking, bending, and kneeling. [He] should avoid dust and other irritating factors to limit asthma attack[s]." *Id.* at 451. But relying so heavily on the opinion of a one-time consultant rarely is appropriate. Indeed, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Estrella*, 925 F.3d at 98 (first quoting *Selian*, 708 F.3d at 419). That is the case here where Perry's multiple comorbidities demand a longitudinal analysis of physical impairments and how they, singly and in combination, affect his capacity to work.

What is more, Dr. Liu's April 2015 opinion that Perry had full range of motion in both shoulders and did not otherwise have any limitations using his upper extremities, *see* Docket Item 8 at 450, had become stale by the time the ALJ rendered his decision. Although the "mere passage of time does not render an opinion stale," *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018), "significant developments" in an individual's medical history after the examination underlying an opinion might. *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018). Here, Perry first complained of acute right shoulder pain in April 2017—two years after Dr. Liu examined him. *See* Docket Item 8 at 565. "A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018).

7

Finally, the ALJ's procedural error in discounting Dr. Gbadamosi's opinion likely inured to Perry's prejudice. The ALJ found that "[c]onsidering [Perry's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Perry] could perform." Docket Item 8 at 24. Specifically, the ALJ credited the testimony of a vocational expert that Perry could find work as an inspector/hand packager, shipping and receiving weight, or final inspector. *Id.*

The Court finds no assurance in the record that, had the ALJ included Dr. Gbadamosi's more restrictive limitations, the vocational expert still would have testified that Perry could find work in the national economy. For example, the ALJ did not pose any hypotheticals to the vocational expert in which Perry had significant limitations in reaching, pushing, and pulling. And the definition of light work suggests that if those limitations had been included, Perry may well have been precluded from such jobs. Specifically, light work assumes the claimant's ability to lift up to twenty pounds and to perform "some pushing and pulling of arm or leg controls," 20 C.F.R. §§ 404.1567(b); 416.967(b)—all activities that Dr. Gbadamosi found Perry could not do, *see* Docket Item 8 at 643, 645.

Additionally, to the extent the ALJ may implicitly have found Dr. Gbadamosi's opinion unpersuasive because it did not address how long Perry's limitations might last or any limitations for standing or walking, the proper approach was to recontact Dr. Gbadamosi for additional records and information—not to disregard the opinion entirely. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human*

*Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)); *see also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, an ALJ "has a duty" to "request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted)).[4]

The record does not indicate that the ALJ made such an effort here. And that procedural error was not harmless. The vocational expert testified that an inspector/hand packager would involve "mostly standing." Docket Item 8 at 65. The ALJ's failure to recontact Dr. Gbadamosi about Perry's ability to stand and walk therefore might well have inured to Perry's prejudice, given that Dr. Gbadamosi found Perry significantly limited in his capacity to even sit, *see id.* at 644. Likewise, Dr.

---

[4] Section 416.913(b)(6) was amended, effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Perry applied for disability benefits beginning February 5, 2015—that is, before the date the changes became effective—his claim is governed by the prior regulation. *See id.* at 5844-46.

9

Gbadamosi did not opine on how long Perry's limitation might last—another gap that the ALJ should have filled by re-contacting Dr. Gbadamosi and asking him that simple question.

For all these reasons, the case is remanded so that the ALJ can reconsider Perry's specific functional limitations after appropriately applying the treating-physician rule to the opinion of Dr. Gbadamosi. This Court "will not reach the remaining issues raised by [Perry] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Perry's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 27, 2020
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE